United STaTES Distct anrt

**Plaintiff**
John P. Laws
1505West Barr Drive
Tampa, Florida

Middle District of Florida

Tampa Division

8:19 cv2651 T33cpt

**Defendant #1**
7-ELEVEN Corporation.
Dallas, Texas.
Legal service for the State of Florida:
Corporate Creations Network Inc.
11380 Prosperity Farms Road #221E
Palm Beach Gardens, Florida 33410

**Defendant #2**
UNUM Life Insurance Co.
2211Congree Street
Portland, Maine 04102

**Defendant #3**
Eric Welter Attorney at Law
Representing 7-Eleven.
Welter Law Firm P.C.
20130 Lakeview Center Plaza, Suite 400
Ashburn, Virginia 20147

The defendants 1 and 2, had a fiduciary responsibility to
the Plaintiff.

The plaintiff was an employee and customer.  Neither defendant had the best interest of the defendant in mind. Both were merely concerned about the cost. Never about the impact on Plaintiff's health or personal life.

Plaintiff believes the issue is that 7-Eleven failed to fully communicate clearly with UNUM the scope of the disability Program which 7-Eleven offered its employees. (exhibit A the 7-Eleven benefits Page formula)

The 7-Eleven has tried to weaponize the law in its attempt to perpetrate this fraud.

Defendant three, Mr. Welter assisted and supported the fraudulent actions of 7-Eleven.

He took the lies 7-Eleven gave him as fact.  Plaintiff had to offer evidence to prove some of those falsehoods. Plaintiff contends the 7-Eleven did with malice and fore thought conspired to commit a fraud on the plaintiff.

The defendant had conflated confused and confounded the issue with a private disability insurance policy from UNUM Life insurance company in Portland. Maine with the benefits listed on the employee benefit page of the Corp website.

This policy clearly states Plaintiff owns the policy. 7-Eleven has suggested it is paying a benefit listed on the employee benefit page of the Corp website of 7- Eleven with funds which belong to the Plaintiff.

Plaintiff has numerous times negotiated in good faith. Defendant has promoted false facts.

The GEA program was a Company program where stores were visited monthly for an inspection.  Plaintiff excelled receiving numerous perfect scores.  When this position became vacant and plaintiff asked his FC, George Fairman about it. Plaintiff was told the company saw it a as a stepping stoneBto becoming a FC. (CODE FOR YOU WILL NEVER BE PROMOTED TO BE A FC) (exhibit B)

Aaron Yount was the Market Manager when the plaintiff's store received the first perfect score on the GEA assessment.   This was the first of several.  (exhibit C)

7-Eleven has suggested they have had an internal investigation and found nothing to support Plaintiff's case.

Much like a fox guarding the hen house. Nothing was found because they did not want to find anything.

Plaintiff finds that difficult to believe since plaintiff was never contacted by anyone.

Defendant's Attorney has disparaged Plaintiff with these false facts.

Plaintiff has been passed over for a well-earned promotion.   Because plaintiff has consistently outperformed plaintiff's peers on every matric defendant has.

Plaintiff was at times asked to work with and help train those who received promotions.

Defendant highly recommended (pressured) Plaintiff submit to a blood test for open enrollment in the 2014&2015 years. This was to save on the insurance premiums. (Exhibit D Blood test from Quest)
Plaintiff tested positive for the HIV virus in March 2007 before being hired by the defendant.  This is a strict violation of Federal Employment laws.

Plaintiff contends the results of those tests is the reason Plaintiff was not promoted.
There was no legitimate performance reason.  Plaintiff won many awards over the years.
Plaintiff has often been referred to as "the best of the best "by franchisees.

Plaintiff only requested to be trained for the next level in defendant's employment structure.
Plaintiff's income, salary would have been doubled and Plaintiff would not have had to work as hard.  These facts suggest Plaintiff May not have gotten sick or not as sick

Plaintiff contends that the defendant is guilty of attempted murder.   The plaintiff contracted meningitis while working for 7- Eleven, since plaintiff had no personal life the 500+ customers per day probably exposed the plaintiff to the virus.

A franchisee in California is being followed, harassed, intimidated and almost run down in a CVS parking lot by this man)

Plaintiff brought many years of foodservice experience and being self-employed to the table.   Both are skills most FC's did not because they had always been a Corp employee.

Knowing the Plaintiff's health situation defendant did cause Plaintiff to work unreasonable work load.   Plaintiff worked 80+ hours for three weeks to have store ready to be franchised.  Plaintiff never really recovered from this abuse.

In November of 2007 the plaintiff was over worked to the point of resignation.  This just goes to show that 7-Eleven has a pattern of abusing the Store manager because of the salary.

There is no safe guard in the system. The company benefits and has a blind eye to fair a just treatment. (Exhibit E)

When Plaintiff's store franchised Plaintiff received 8 hours of help from an employee not on store staff After Plaintiff's store franchised plaintiff was put on special assignment which meant plaintiff was not assigned to one specific store. Plaintiff assisted other stores with the preparation of being franchised. Plaintiff worked 2-3weeks 80-120+ hours, and plaintiff knew what to do and how to do it.

At times the staff in these stores were very abusive to Plaintiff and nothing was done about this. Plaintiff was told by staff that Plaintiff was not needed and once told by a staff member to kiss his ass.

Managers and Field Consultants were told, but no one was reprimanded. Keeping the staff until the store franchised was most important because the store is sold as fully staffed.

This went to support plaintiff's feeling that plaintiff was no long wanted as an employee. Since there was no legitimate reason to dismiss plaintiff 7-Eleven was going to make a situation where Plaintiff would quit. Hostile work environment.

One store plaintiff helped in was the Market training store. The store manager was out because of a worker compensation issue. The store Assistant Manager gave the plaintiff push back on multiple issues.

Plaintiff was only the following company guidelines, which the Assistant Manager was unaware of and lacked proper knowledge about.

Plaintiff would use reports to help improve the store performance. The reports and how to make use of is noted in Plaintiff's review. (Exhibit F)

Plaintiff was caused to sleep in car on and off for many months because the ratio of income to rent priced plaintiff out of the market.

On September 5. 2018 plaintiff blacked out at the public library. This was caused by a pulmonary embolism.

ER Drs concluded that blood clots formed in plaintiff's legs and migrated to plaintiff's lungs. The ER Drs told plaintiff that the plaintiff was lucky because in most cases to patient is dead within ninety seconds.

Plaintiff is now required to take a blood thinning medication and will in all likelihood will have to for the rest of plaintiff's life.   This is a quality of life issue which plaintiff will have to deal with.

7-Eleven only speaks one langue and that is dollars and cents.

The company motto has often been "when they MAKE us, we will fix it"

Plaintiff requests that the court to help 7-Eleven to do the right thing.

There are differing formulas as to how the benefits are calculated.  Different starting points and whether or not bonuses are included. UNUM does not include bonuses but 7-Eleven does.  Both parties are more concerned with the dollar and cents cost than the damage being done to plaintiff's life.

The plaintiff asks the court for the two-year clock for filing a case be started on October 28. 2017 10:30 am EST.

This date and time were the first time anyone from 7-Eleven actually looked at the Benefit pages and acknowledged what was there.  Before this date and time everyone deflected to the UNUM policy.

The defendant should not be rewarded for trying to conflate, confound and confuse the issue in hopes of saving money,

Plaintiff's close out audit was a plus audit. Meaning the inventory actually counted was more than 7- Eleven as the store inventory. These audits are done with more care because the franchisee is purchasing this inventory. Plaintiff's FC told the plaintiff that is was impossible for a Corp Store to have a plus audit. Plaintiff had more than one plus audit over the years.

The audit company does not always do a good job. One audit there were three entire shelves in the candy isle not counted. After the audit is done it is uploaded to the system and the new numbers show the next day. All three shelves showed zero inventory. (Exhibit G)

Additional reports which show the level at which plaintiff operated the store. The PSA report shows same week last year with plus or minus for the store and the market. Plaintiff ALWAYS beat the market. Plaintiff's numbers helped the market achieve its numbers. (Exhibit H) The store earnings report shows how well plaintiff did in accordance with the budgeted amounts for each category.

They also show where the company did not buget for an increase in the rent for the building.  This would have been agreed to years earlier.  It also shows where plaintiff save the company money on shortage and payroll. (exhibit I)
    This letter to George Fairman, who at the time was plaintiff's direct supervisor.  this letter speaks to the lack of support plaintiff experienced over the years. (Exhibit J)


Respectfully Submitted,

John P. Laws

1505 West Barr

Tampa Fl
      33603

# Compensatory  Damages

If plaintiff had been promoted plaintiff's salary would have been about double.

Plaintiff's performance should have begged for a promotion.

Mr. Welter has suggested that all decisions were made based on performance and company needs. Having the best store out of one hundred plus was not good enough.  Plaintiff's store constantly outpaced the market.  Plaintiff's numbers made everyone above plaintiff look good.

Plaintiff requests the court to order 7- Eleven to pay the plaintiff the difference in wages of a store manager and a filed consultant for the 5 years plaintiff requested to be trained for the well-deserved promotion.

The difference is about $35,000.00per year, for a total of $175,000.00.

Plaintiff was often sought out for help and assistance for store managers, Field consultants and franchisees.

Plaintiff is referred to as a resource in annual review.

# PUNITIVE DAMAGES

The defendant, 7-Eleven is notorious for offing something only to slowly chip away at the offering until it is totally unrecognizable.

(California franchise owner's association.)

(franchisee who was stalked, intimidated and almost killed by an agent working for 7-Eleven) Mr. Kahn has stated in his lawsuit the 7-Eleven has tried to run him out in any way in order to be able to resell his high value stores.

7-Eleven acts more like the old-time mafia rather than a publicly traded company.

Plaintiff had three situations where the plaintiff almost died because the defendant did not honor the promise it made to all of its employees.

This benefit was part of the employee package offered as an enticement to prospective new employees. (FRAUD)

The first was when the plaintiff's store franchised.  Plaintiff had to work over eighty hours for three weeks in a row.  This had a negative impact on plaintiff's health and life.   Plaintiff developed meningitis and almost died.  Plaintiff working way too many hours was normal.  Plaintiff made everyone above the plaintiff's pay grade look go

Defendant had the knowledge that plaintiff was HIV+.  Plaintiff never recovered from this abuse.

Kyle Darling (market manager Plaintiff's boss' boss) came to the store several times in the weeks before the changeover date and expressed doubt that the store would be ready but offered no help in achieving that goal.

The second was the fact plaintiff's income to rent ratio made it difficult for plaintiff to rent an apartment. This caused the plaintiff to sleep in plaintiff's car on and off. Plaintiff developed blood clots in plaintiff's legs which migrated to the plaintiff's lungs and resulted in a pulmonary embolism. (car has since been repossessed this caused plaintiff to sleep outside for six weeks)

The third was when plaintiff had thoughts of suicide and hurting others While being treated for depressions anxiety and stress. The plaintiff was prescribed lithium. This had an adverse impact. It caused the plaintiff to have the thought of using the plaintiff's car as a weapon to end the pain. This would have involved the hurting of many innocent people. (Plaintiff has NEVER had such thoughts before)

Plaintiff had always believed in the team concept, and was always a team player even when plaintiffs was out sourced to another market

The difference in what plaintiff receives and what was promised on the employee benefit section of the Corp website caused a serious rift between plaintiff and the plaintiff's children.

The wording is very clear. The plaintiff has done some research on this topic, and where there has been a discrepancy the courts have typically ruled in the plaintiff's favor.

2

7-Eleven had editorial control over the Corp Website.  Plaintiff should not be punished for someone in a Dallas' mistake.  Someone signed off on the update for the employee benefit section of the Corp website.

Defendant has tried to excuse this as a clerical error.  Plaintiff finds that difficult to believe given the detail with which the Employee Benefit pages were compose.

The CPI annual adjustment would suggest this benefit was intended to be a lifetime benefit.  The fact there is no age out clause further supports this claim.

Plaintiff requests the Court to order 7-Eleven to pay this benefit to plaintiff for the remainder of plaintiff's life.

Plaintiff also requests that any other employee who qualified for these benefits be paid as well.

Plaintiff tried to calculate a fair amount but how does one put a dollar value on one's own life? 7-Eleven put a zero value; then multiply that by three.

Add the other personal cost to the plaintiff, some of which will never be fixed.

How much value should the difficulties caused by the Defendant be worth?

3

Plaintiff also requests the court to order 7-Eleven to pay a onetime lump sum payment to $5.000.000.00 five million dollars.

Plaintiff believes a group of twelve reasonable people, once they see the evidence, would award a higher amount.

There is no amount of money that can fix some of what 7-Eleven broke.  The law allows for no other remedy.

Plaintiff would prefer to go back to work but that is not an option.

The formula is included in the body of the employee benefit pages and is repeated in the glossary.

Mr. Welter, 7-Eleven's attorney has suggested that the governing documents control.

Plaintiff is not sure to what extent Mr. Welter can be held responsible for his part in pushing the 7-Eleven narrative with lies.  Ceinture or fine?

Those same documents state that if there is something in the plan summery which is not addressed in the controlling documents those are to be considered part of the governing documents by reference. The formula which 7-Eleven does not want to pay.

Plaintiff would suggest the fact the formal being listed twice, in the body of the benefit pages and repeated in the glossary, 7-Eleven had two times to get it right.

4

Everything that could be done to sweep under the rug.

If plaintiff was to die before any settlement. whether the court orders or other, then 7-Eleven would not have to pay out anything.

Plaintiff requests the court order 7-Eleven to put in place a safe guard where store managers are not abused because of being paid a salary.  It is impossible to keep everything done to the company stands in a reasonable work week.

5